# ADDISON COUNTY,

[ Continued from *ante*, page 263.]

---

## EDWARD FULLER *v.* WILLIAM ELLIS.

### *Agency.*

The primary obligation of an agent, whose authority is limited by instructions, is to adhere faithfully to those instructions, for if he unnecessarily exceed his commission he renders himself responsible to the principal for the consequences of his act.

The plaintiff hired the defendant, who was skilled in the management of horses, to take two horses to Richmond, Va., for exhibition at the state fair, and to sell if possible for the most he could get for them, and agreed to pay the expenses of the defendant, and as much for his services as any body would pay him, but no sum was agreed upon. The defendant sold one horse in Richmond, but could not sell the other. The plaintiff, after several days, directed the defendant by letter to call upon some men, named, in Petersburg, to aid him in selling the remaining horse, which he did, but effected no sale. Then, without instructions, or communicating with the plaintiff, but in good faith, the defendant took the horse to Goldsborough, and thence southward to Charleston, South Carolina, making all possible effort to sell him, and finally succeeded, but not till his expenses amounted to $445.23. Owing to the unsettled state of the country at the time, the fall and winter of 1860-61, it was impossible for the defendant to bring back the horse any time after he reached Wilmington, North Carolina. At Fair Bluff, North Carolina, the defendant wrote to his wife in Middlebury, Vt., to call on the plaintiff for money on his account, which she did, and the plaintiff paid her $10. on the defendant's account, she informing him of the contents of her husband's letter, and that he was going to Columbia to try to sell the horse. This was all the plaintiff heard from the defendant after he left Richmond until he got home. *Held*, that the defendant exceeded his instructions, and was not entitled to pay for his expenses and time after he left Petersburg; and regarding him as a general agent he did not exercise a sound discretion, and act with common prudence, and could not recover.

22

Fuller *v.* Ellis.

THIS was an action of *assumpsit*, which was referred. The court, PIERPOINT, Ch. J., presiding, rendered judgment on the referees' report for the defendant,—to which the plaintiff excepted.

The referees reported as follows :

"On or about the 15th of September, 1860, the plaintiff hired the "defendant, who had great experience and skill in the buying, man- "agement and sale of horses, to go with him to Baltimore, Maryland, "to assist him in selling a lot of horses, which he was about to take "to that market from Vermont to sell. The plaintiff agreed to pay "the defendant's expenses, and as much for his services as anybody "would pay him, but no definite sum was agreed on. The parties "went to Baltimore and remained there engaged in the business for "which they had gone there, until October 9th, 1860. Among the "horses taken from Vermont by the plaintiff was a black stallion "and a bay gelding, which they were unable to sell in Baltimore. "On the 9th day of October, 1860, the defendant, by direction of "the plaintiff, took these horses to Richmond to exhibit at the Vir- "ginia State Fair, which was to be held about that time, and to sell "them if possible, the plaintiff directing him to do the best he could "with them.

"The defendant remained at Richmond until the 6th day of "November, and during the time sold the bay horse for one hundred "and seventy dollars in gold, but did not succeed in finding a pur- "chaser for the black stallion.

"On or about the 6th day of November, the defendant received a "letter, which the evidence showed was written by direction of the "plaintiff (who does not write,) and in his presence, of which the "following is a copy :

"BALTIMORE, November 4th, 1860.

"FRIEND ELLIS—SIR :—Fuller is with me now. He has sold "out, and is ready to come to you or go home. I tell him to go to "York—that he can't do you any good ; so he has concluded to go "to New York, to the Compton House, and there stay until you sell "and come there to him. Adams has a very bad name here. Fuller "says look for him. Fuller will start for the Compton House to- "day. He wants you should write him as soon as you get this all "about the prospects and direct it to the Compton House, New York, "as he will stay there until you come. I have sold my three geld- "ings ; shall start for New York to-morrow with the stallion. Mr. "Bell and Mr. Raglin of Petersburg, Fuller has seen. They think "the horse can be sold there. Fuller has seen them. He thinks "it would be a good idea for you to see them. He says if you can "get Raglin's name on a note for the horse, it would be good, *and* "*they might sight you to a place to sell.*

"H. W. NELSON."

" The defendant received no instructions whatever in relation to the " horse from the time he left Baltimore, except those contained in the " foregoing letter ; but, acting on what he supposed to be his author- " ity, he immediately on the receipt of said letter, went with the " horse to Petersburg, in Virginia, and saw the Mr. Bell mentioned " therein.    Having learned from him that there was no prospect of " selling the horse in Petersburg, he proceeded with him to Golds- " boro', in North Carolina, by the way of Stony Creek, Halifax, " Tarboro, Clarksville and Wilson.    *At Goldsboro' he wrote to the* " *plaintiff, but the letter was not produced by the plaintiff, and there was* " *no evidence of the contents.*    From Goldsboro' he carried the horse " to Wilmington, North Carolina, and remained in Wilmington five " days, endeavoring to sell the horse there, but without any success. " From Wilmington he went, via Black Rock, Fair Bluff and Marion " Court House, to Florence, and from Florence by cars to Charles- " ton, South Carolina.    At Charleston he tried unsuccessfully to " sell the horse, and finally swopped him for a pair of horses, and " received fifty dollars to boot.    Being unable to sell the pair in " Charleston, after remaining there thirty-eight days, he took the " pair to Savannah, in Georgia, and after remaining there seven " weeks, endeavoring to sell them, he finally, in the last part of " February, sold them for three hundred dollars.    The defendant " returned to his home in Middlebury, via Montgomery, Ala., Nash- " ville and Louisville, it being at that time impossible to reach the " Northern States by the coast route from Savannah, and reached " home in May, 1861.    In the unsettled state of affairs in the South- " ern States in the fall and winter of 1860–61, it was impossible for " the defendant to bring the horse back at any time after he reached " Wilmington.

" The referees find that the defendant, throughout, acted in perfect " good faith for what he supposed to be the best interests of the " plaintiff, and for what he might reasonably have supposed to be " such at the time he left Petersburg.

" The defendant received from the plaintiff, at Baltimore, ten dol- " lars, and at the time he started for Richmond, thirty dollars.    He " sold the bay horse at Richmond for one hundred and seventy-five " dollars in currency, and received a premium of fifty dollars on the " stallion at the Virginia state fair.    The proceeds of the sale of the " stallion were three hundred and fifty dollars, which we find to have " been as much as he was worth.    The blanket and halters taken " with the horses were worth nineteen dollars, and when the " defendant was at Fair Bluff, on his way from Wilmington to Flor- " ence, he wrote to his wife to call on the plaintiff for money on his " account, which she did, and the plaintiff paid her ten dollars on the " account of the defendant, making in all the sum of six hundred and " forty-four dollars received by the defendant from and on account of " the plaintiff.

Fuller *v.* Ellis.

" The necessary expenses of the defendant, including the keeping " of the horses and his fare from Savannah to Vermont, from the " time he left Baltimore until his return, amounted to four hundred " and forty-five dollars and twenty-three cents, of which sum one " hundred and five dollars and fifty-five cents accrued before he left " Petersburg, and all of which was paid by him out of the money " received by him from and on account of the plaintiff, as before " stated.

" The defendant claimed before the referees that he was entitled to " be allowed, in offset to the plaintiff's demand in this action, the " whole amount of the expenses so paid, and also, for his services for " six months, the time necessarily occupied by him in the sale of the " horses, in the manner before stated, and in his return home, at the " rate of fifty dollars per month, which rate we find would be a rea- " sonable and just compensation for the defendant's services, under " his contract with the plaintiff.

" The referees find that under all the circumstances of the case, " the defendant ought to be allowed for his time and expenses as " charged by him, and that the plaintiff is not entitled to recover in " this action ; but if the court should be of the opinion that the " defendant was not authorized or warranted in going beyond Peters- " burg with the plaintiff's horse, although he acted in good faith in " so doing, and made every endeavor to sell him throughout the " route before described, and that the defendant ought not to be " allowed his expenses and compensation for his time, after he left " Petersburg, then the referees report that allowing to the defendant " for his services and expenses up to that time the sum of two hun- " dred and five dollars and eighty-five cents, there would be due to " the plaintiff, including interest, the sum of five hundred and " ninety-eight dollars and seven cents, for which he should have " judgment.

" When the defendant wrote to his wife from Fair Bluff, as before " stated, he told her that he was going to Columbia, in South Caro- " lina, to endeavor to sell the horse there. His wife communicated " the contents of the letter to the plaintiff, when she applied to him " for money on the defendant's account, according to the directions " contained in said letter."

*E. R. Wright, L. D. Eldridge* and *E. J. Phelps,* for the plaintiff.

*J. W. Stewart,* for the defendant.

The opinion of the court was delivered by

Wilson, J. It does not appear that the defendant, prior to October 9th, 1860, had or exercised any general authority or discretion

in the business for which he was employed, but it would seem from the language of the report that the defendant, from the time he commenced assisting the plaintiff in selling the horses to the 9th of October acted with the plaintiff and under special instructions.

The primary obligation of an agent, whose authority is limited by instructions, is to adhere faithfully to those instructions, for if he unnecessarily exceed his commission he renders himself responsible to the principal for the consequences of his act. This case, we think, is not an exception to the general rule. It is claimed by the defendant that a fair interpretation of the authority under which he took the horses to Richmond, and the letter of November 4th, 1860, justify his subsequent acts. The report finds that on the 9th day of October, 1860, the defendant, by direction of the plaintiff, took two horses, (a black stallion and a bay gelding,) to Richmond to exhibit at the Virginia State Fair, which was to be held about that time, and to sell them if possible, the plaintiff directing the defendant to do the best he could with them. These instructions authorized the defendant to exercise some discretion as to the price for which he might sell the horses, with a view to the plaintiff's interest, but they did not authorize the defendant to go with them beyond Richmond. The letter of November 4th, 1860, authorized the defendant to take the horse remaining unsold from Richmond to Petersburgh. The plaintiff by this letter informed the defendant that he had seen Messrs. Bell and Raglin, of Petersburgh, and they thought the horse could be sold there, and the plaintiff suggested that he thought it would be well for the defendant to see them, that they might inform the defendant of a place at which he could sell the horse. The referees found that the defendant received no instructions whatever in relation to the horse from the time he left Baltimore, except those contained in the foregoing letter, but, acting on what he supposed to be his authority, he immediately on the receipt of the letter, went with the horse to Petersburgh, in Virginia, and saw the Mr. Bell referred to and learned from him there was no prospect of selling the horse at that place. The letter did not authorize the defendant to go beyond Petersburgh, or that vicinity, with the horse unless he was directed

by Bell or Raglin to a place where they thought he could sell him. It does not appear, nor is it claimed by the defendant that he made any inquiry of Bell or Raglin, or that either of them gave him any information, or made any suggestion to the defendant as to a place where he could sell the horse, nor does it appear that the defendant had when he left Petersburgh, any information or even supposition as to a place where the horse could be sold. Under such circumstances the duty of the defendant was too plain to have admitted of a doubt. The facilities, at that time, for sending communications by mail and by telegraph, render his neglect to write or telegraph to the plaintiff inexcusable, and we are entirely agreed that his subsequent acts were without authority. It is claimed by the defendant that the authority under which he acted was not precisely limited or defined, and that he was entitled to the exercise of a reasonable discretion in its execution. It is doubtless true that where the principal's instructions to his agent are equivocal, the agent has the benefit of the doubt, but we have not been able to discover anything ambiguous in the instructions under which the defendant was authorized to act, nor does it appear that he was in any way misled by them. The supposition of the defendant as to his authority had reference to his journey from Richmond to Petersburgh, but the referees have not found, nor is it claimed by the defendant that his journey beyond Petersburgh was the result of any misapprehension on his part as to the extent of his authority. If we should treat the defendant as a general agent it would not aid him in his defense, for a general agent is bound to exercise a sound discretion in the business in which he is engaged, and should conduct it as a prudent and discreet man should manage his own affairs. The facts disclosed by the referees show that the defendant did not exercise a sound discretion, nor act with common prudence, but on the contrary it appears that he acted not only without authority, but regardless of the interests of the plaintiff. It is true that the referees found that the defendant acted in good faith in going beyond Petersburgh, but this was nothing more than he was required to do whether the journey was with or without authority. It is further true that the defendant was also

required to follow the instructions of his principal so far as they were explicit, and wherein he was allowed the exercise of any discretion he was required to exercise it with common prudence, but it appears that he did neither.

It is insisted by the defendant's counsel that the payment of money to the defendant's wife under the circumstances mentioned in the report was a recognition and adoption by the plaintiff of the acts of the defendant. The report finds that when the defendant was at Fair Bluff, on his way from Wilmington to Florence, he wrote to his wife to call on the plaintiff for money on his account, which she did, and the plaintiff paid her ten dollars on the defendant's account. The report says : "the defendant's wife communicated the contents of the letter to the plaintiff, when she applied to him for the money, according to the directions contained in the letter." The report discloses that when the defendant's wife applied to the plaintiff for the money she told him the defendant was at Fair Bluff, and that he was going to Columbia, in South Carolina, to endeavor to sell the horse, but it does not appear that the plaintiff was informed at that time by what authority the defendant claimed to have taken the horse to Fair Bluff, whether Bell or Raglin had directed the defendant with the horse, nor whether the defendant claimed, or would claim, to act as the agent of the plaintiff in his journey with the horse beyond Petersburgh ; nor does it appear whether the ten dollars was paid to the defendant for unauthorized expenses which had accrued, or for expenses which should be incurred by the defendant in this *wandering*, or paid to him for his services and expenses which were performed and paid out by him while acting within the scope of his authority. The referees do not say in their report that they found the plaintiff recognized or adopted the acts of the defendant in going with the horse beyond Petersburg, nor have they reported facts which, in our judgment, constitute a recognition of the journey beyond that place. The mere payment of the money, without anything to show for what purpose it was paid, is not sufficient to constitute a recognition of the unauthorized acts of the defendant, but it should also appear that he made the payment with full knowledge of the facts intending to ratify what the defendant had done, or that he

Fuller *v.* Ellis.

made it to enable the defendant to continue his journey in pursuit of a purchaser, or that he in some other way sanctioned the defendant's acts. The plaintiff ought not to be cheated into a recognition of the defendant's authority.

The judgment of the county court is reversed and judgment for the plaintiff to recover $598.07 damages and his costs.